STATE of Minnesota, Respondent,

v.

Jerome Peter SUFKA, Appellant.

No. 49060.

Supreme Court of Minnesota.

Aug. 15, 1980.

C. Paul Jones, Public Defender, and Mary E. Steenson, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., Barbara D. Gill, Sp. Asst. Atty. Gen., St. Paul, Richard T. Jessen, County Atty., Foley, for respondent.

TODD, Justice.

Petitioner was found guilty by a district court jury of charges of burglary and aggravated robbery, Minn.Stat. §§ 609.58, subd. 2(1)(b) and 609.245 (1978), and was sentenced by the trial court to a prison term of 1 year and 1 day to 20 years for the aggravated robbery. This appeal, from an order of the district court denying a petition for postconviction relief, raises three issues: (1) whether the trial court prejudicially erred in denying a motion to suppress statements by the petitioner to the police on the ground that the statements were obtained in violation of his sixth amendment right to counsel, (2) whether the admission of the statements, by revealing that petitioner had tried to negotiate a deal with the police in return for information about what happened, violated R. 410, R.Evid., and (3) whether the trial court prejudicially erred in denying a defense request for a midtrial continuance so that petitioner could locate and call, as a witness rebutting the state's rebuttal evidence, a man who had been under subpoena and had testified in the state's case in chief. We affirm.

At 1 a. m. on January 15, 1978, two armed men wearing nylon stockings over their faces broke into a farmhouse near St. Cloud and robbed the occupants, a drug dealer and his girlfriend, of money, drugs, a stereo, and other items. Evidence establishing petitioner's participation in the offense consisted of the following:

(a) The victims were segregated during the robbery, one victim with one robber, the other with the other robber. The female victim could see the facial features of the one robber through the stocking and immediately and positively recognized him as petitioner, whom she knew as Omar and who had been at the farm the previous afternoon in a spurned attempt to buy drugs. She told sheriff's deputies that she knew this robber, and they obtained a picture of petitioner, who uses the name Omar, and she positively identified him as the man to whom she was referring.

(b) Petitioner, when arrested later in the day, was wearing boots which were exactly the same size as those of one of the robbers, both of whom had left a number of tracks.

(c) After being given a *Miranda* warning but before the prosecution was formally commenced against him, petitioner was subjected to custodial interrogation. Petitioner waived his fifth and sixth amendment rights and talked with the officers. Before he was even told that he was ·suspected of the robbery of some people at a farm, petitioner responded that he had been to the farm the previous afternoon but had not committed the robbery.

(d) Later, on three separate occasions— twice while being transported in a motor vehicle to a different city and once on the telephone—petitioner made statements to the same deputy who had earlier interrogated him that he wanted to make a deal, that he had not committed the robbery, but that he knew who the robbers were because they had forced him to accompany them to the farm and he had waited in the getaway vehicle while the robbery was committed.

1. The main issue in this case is whether petitioner's sixth amendment right to counsel was violated by elicitation of the statements from petitioner on the three occasions subsequent to the admittedly lawful first interrogation.

■ We emphasize at the outset that this is not a *Miranda*-type case involving custodial interrogation of a suspect, but rather is a sixth amendment right-to-counsel case. The definition of "interrogation" in the fifth amendment or *Miranda* context is not necessarily applicable in the sixth amendment context. *Rhode Island v. Innis*, —— U.S. ——, 100 S.Ct. 1682, 1689, n.4, 64 L.Ed.2d 297 (1980). Interrogation in the fifth amendment context occurs when police subject a suspect in custody to express questioning or to words or actions that the police should know are reasonably likely to elicit an incriminating response. *Id.* However, in the sixth amendment context, the issue is not whether the suspect has been subjected to custodial interrogation but whether, once adversary proceedings have

begun, the government, without first obtaining a waiver, has elicited incriminating statements either openly or surreptitiously. *United States v. Henry*, —— U.S. ——, 100 S.Ct. 2183, 65 L.Ed.2d —— (1980).

The best way to illustrate this difference in approach is to compare the holdings in *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), a fifth amendment case, with the decisions in *Henry* and *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), both sixth amendment cases. In *Hoffa*, the government had an undercover agent, who was a friend of Hoffa, talk to Hoffa and elicit incriminating statements from him. Since Hoffa was not subjected to custodial interrogation in the *Miranda* sense, *Miranda* had no application, and since he had not been charged, the sixth amendment had no applicability. Thus, the statements were not .suppressible either on fifth or sixth amendment grounds. In *Massiah*, the government also had an undercover agent, who was a friend of Massiah, talk to Massiah and elicit incriminating statements from him. Massiah, like Hoffa, was not subjected to custodial interrogation. But Massiah, unlike Hoffa, was a charged defendant whose sixth amendment right to counsel had attached before the incriminating statements were elicited. Because the right to counsel had attached and the right had not been waived by Massiah, the government's elicitation, through its agent, of incriminating statements was a violation of the sixth amendment. The recent *Henry* case which reaffirmed and arguably extended the *Massiah* holding, involved the government's use of a cellmate of Henry, who was in jail pending trial, to be alert to any incriminating statements made by Henry. While the informant was told not to initiate conversations with or question Henry regarding the charges against him, the record showed that the informant was expected to and did use his propinquity to Henry to establish a relationship of trust which would lead Henry to confide in him. Because the incriminating statements the informant obtained from Henry were "de-

liberately elicited" within the meaning of *Massiah*, and because there obviously was no waiver, the Court held that Henry's sixth amendment right to counsel was violated.

As the Court explicitly stated in *Henry*, the concept of waiver had no application in the context of that case because Henry had no knowledge that the person with whom he was speaking was a government agent. *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), is the case which best illustrates the Supreme Court's view of waiver in the sixth amendment context. The defendant there was a "deeply religious" former mental patient; his attorney had obtained a promise from a detective that he would not question defendant as he transported defendant to a different city and defendant, even during the trip, asserted his right to counsel. However, the detective, playing on the defendant's religious beliefs, gave what is now referred to as the "Christian Burial Speech," in which he referred to the forecast of snow and said that if the missing girl's grave was not discovered before the snowfall it might never be discovered, thus depriving her parents of the right to give her a Christian burial. This "speech" prompted defendant to lead the detective to the place where he had buried the girl. In reversing the conviction for first-degree murder on the ground that the statements should have been suppressed, the Court concluded that the detective had deliberately sought to elicit the incriminating statements in violation of his promise. In holding that defendant had not waived his sixth amendment right to counsel, the Court stated that it was incumbent upon the state to prove that the defendant had intentionally relinquished his right to counsel and that the state had failed to do this.

Recently, in *Giddings v. State*, 290 N.W.2d 595 (Minn.1980), expressing our general disapproval of any interrogation, custodial or noncustodial, of any defendant whose sixth amendment right to counsel has attached, we reversed a conviction on the ground that the state had not shown that the petitioner there had waived his right to counsel and that, therefore, the deliberate elicitation of incriminating statements by the police from petitioner at his home after he had been formally charged was a violation of petitioner's right to counsel. In *Giddings*, the police went to the petitioner's home, took pictures of his baby and otherwise created a casual friendly atmosphere, and, although being advised by petitioner that he was represented and notwithstanding petitioner's understanding that his statements would not be used against him, initiated a conversation for the purpose of deliberately eliciting incriminating statements from him.

The record in this case reveals that each of petitioner's three statements to the police after his sixth amendment right to counsel had attached were made to an officer whom petitioner had known on a personal basis for a number of years. The prosecutor did not explain at the omnibus hearing why this officer was chosen to transport petitioner, but the implication is strong that the authorities were hoping this officer might engage petitioner in a friendly conversation which would lead to petitioner's making incriminating statements. It is true that petitioner at least twice before had been a criminal defendant and had served time in prison. We also know that petitioner was given two *Miranda* warnings—once on the day he was arrested and once in court on the day he gave the first of three subsequent statements—before the conversations which concern us occurred. Further, we know that on each of the occasions in question it was petitioner, not the deputy, who initiated the conversations about the charges. While the record reveals that it was petitioner who initiated the conversations with the officer about the charges against him, the record also establishes that once petitioner did this the officer asked questions of him and tried to elicit incriminating statements. In short, we readily conclude that the officer "deliberately elicited" incriminating statements from petitioner.

While there are facts on which one could rely in concluding that petitioner waived his right to counsel, there are other facts which weigh against such a conclusion, most notably the fact that the officer who elicited the statements from petitioner was apparently a long-time acquaintance. This fact and the nature of the conversations petitioner had with the officer suggest to us that petitioner may well have believed that any statements he made on these occasions would not be used against him. Admittedly, the issue is not without doubt, but we conclude that the record made by the state at the omnibus hearing was insufficient to establish that petitioner waived his right to counsel on the three occasions in question.

Notwithstanding our conclusion that on this record the district court erred in admitting the three statements, we affirm the order denying postconviction relief because in our view the error was harmless beyond a reasonable doubt. *Giddings v. State*, 290 N.W.2d 595 (Minn.1980). Petitioner's first statement to the deputy, the admissibility of which was not challenged, was the most incriminating statement which petitioner made to the deputy. Admission of the three subsequent statements allowed the jury to hear petitioner's response to the evidence connecting him to the robbery, a response which the jury otherwise would not have heard, since petitioner did not testify. Without the evidence of petitioner's response to the charges, the likelihood of petitioner's being convicted arguably would have been increased, not decreased,

because it would have left the jury with: (a) the incriminating statement petitioner made when arrested, (b) the positive eyewitness identification testimony of the female victim, (c) the boot print evidence connecting petitioner to the crime, and (d) the evidence that petitioner had a motive for the robbery since he had been spurned earlier in the day when he tried to buy drugs from the male victim. In conclusion, any error was harmless beyond a reasonable doubt.

■ 2. Petitioner's next contention is that the testimony about petitioner wanting to make a deal violated R. 410, R.Evid. As in *State v. Beard*, 288 N.W.2d 717 (Minn. 1980), we do not decide this issue because defense counsel, by failing to raise it in the trial court,[1] is deemed to have forfeited his right to have it considered on appeal.

■ 3. Finally, petitioner contends that the trial court erred in not granting his request for a continuance so as to locate an excused witness for rebuttal purposes. We are satisfied that the trial court did not clearly abuse its discretion in denying continuance under the facts and circumstances of this case.

Affirmed.

---

1. Petitioner did not raise the issue until the postconviction proceeding.