STATE of Minnesota, Appellant, (81–767), Respondent, (81–874),

v.

Pearline CARSON, etc., Respondent, (81–767), Appellant, (81–874).

Nos. 81–767, 81–874.

Supreme Court of Minnesota.

June 11, 1982.

---

Warren Spannaus, Atty. Gen., Thomas Foley, County Atty., St. Paul, for State in both cases.

Steven C. DeCoster, Asst. County Atty., St. Paul, for State in No. 81–767.

C. Paul Jones, Public Defender, Minneapolis, for Carson, etc. in No. 81–874.

William E. Falvey, County Public Defender, St. Paul, Smith, Juster, Feikema, Malmon & Haskvitz and J. Christopher Cuneo, Minneapolis, for Carson in No. 81–767.

KELLEY, Justice.

Defendant was charged in district court with two counts of aggravated robbery (one as principal, the other as an accessory) for her role in the armed robbery of the Kadela Drug Store at 2180 Marshall Avenue in St. Paul on January 13, 1981. After the trial court denied her motion to suppress, she waived her right to a jury trial and allowed

the trial court to decide the issue of guilt on the basis of (a) the testimony of the pharmacist (who described the robbery and identified defendant), (b) the contents of the file, and (c) the testimony taken at the *Rasmussen* hearing (about the warranted search that led to her arrest, about her lineup identification by the pharmacist, and about her confession). The trial court found defendant guilty of one count of aggravated robbery for aiding in the commission of the robbery. The presumptive sentence for aggravated robbery (severity level VII) by one with defendant's criminal history score (three) is an executed term of 49 months in prison. The trial court imposed an executed term of only 36 months. The state's appeal from the sentence and defendant's appeal from judgment of conviction have been consolidated. Issues requiring decision are: (1) the legality of the warranted dwelling search that led to defendant's arrest, (2) admissibility of the eyewitness identification testimony, which defendant claims was the fruit of an illegal arrest as well as the product of an unnecessarily suggestive lineup, (3) admissibility of defendant's confession, which defendant claims was the fruit of an illegal arrest as well as the product of the violation of her right to counsel, and (4) propriety of the sentencing departure. We affirm.

The robbery, which occurred on January 13, 1981, was committed by two black women in their early thirties, one around 5 feet 10 inches tall, the other about 5 feet 6 inches to 5 feet 8 inches, both wearing long tan or beige coats. The taller woman was armed with a .357 Magnum revolver and at one point struck the pharmacist on the head. The shorter one, later identified as defendant, was more passive. The drugs taken were Dilaudid, Preludin, and Percodan.

On January 15, Sergeant Ronald Johnson of the Minneapolis Police Department received information from William Bollenburg, Special Agent of the Bureau of Alcohol, Tobacco and Firearms, that he had received information from a reliable informant that the informant had been in Apartment No. 305 at 1051 Bryant Avenue North

within the previous 72 hours and had seen a large quantity of Dilaudid, Preludin, and cocaine and several handguns. He said that the informant identified the occupants as a black man named Greg and a black woman named Cookie (which, it later turned out, was defendant's nickname) and indicated that he believed they got the drugs by robbing drugstores.

After talking with Bollenburg, Johnson talked with another A.T.F. agent, John Wouza, who said that the informant had accompanied him to the vicinity of the address and pointed out "Greg's" car and that he, Wouza, then checked the registration on this car and found that it belonged to Greg Christianson of Apartment 305, 1051 Bryant North.

Johnson, who was aware of the January 13 robbery in St. Paul, rechecked the registration, then called St. Paul police and obtained more information about the robbery before preparing the following affidavit in support of an application for a search warrant:

On this date, 1/15/81, your affiant Sgt. Ronald Johnson received information from William Bollenburg, Special Agent for Alcohol, Tobacco and Firearms who was at his home sick on this date. Agent Bollenburg stated that a confidential reliable informant who Agent Bollenburg had found to be reliable by providing information which led Agent Bollenburg to three prior felony cases. Agent Bollenburg stated that the informant advised that the informant had been within the past 72 hours in Apartment 305 at 1051 Bryant Avenue North, the apartment of a black male named Greg and a black female named Cookie and observed a large quantity of pharmaceutical bottles namely Dilaudids, Preludin and Cocaine. The confidential reliable informant stated that Greg and Cookie get the drugs by robbing drug stores. The informant also saw several handguns in the apartment. The above mentioned confidential reliable informant took an agent, John Wouza, by the residence at 1051

Bryant Avenue North and pointed out the Motor Vehicle belonging to Greg in Apt. 305 at 1051 Bryant, registration on the vehicle was obtained and listed to Gregory Christianson, 1051 Bryant Avenue North, Apt. 305. On this date, your affiant talked to Detective Walter Johnson, St. Paul Police Department who advised that on 1/13/81 The Kadela Drugstore was robbed in St. Paul by two black females, one carrying what was described as a .357 revolver. Drugs were taken matching the description of the drugs observed at 1051 Bryant Avenue North, Apartment 305, by the above mentioned informant.

A Hennepin County District Court judge signed the warrant that day, and Sergeant Johnson and other officers executed it at 5:30 p. m. Defendant was there along with Greg Christianson, and a number of other people came as the warrant was being executed. The officers saw injection equipment protruding from defendant's pocket; they seized that equipment and also discovered cocaine on her person. In defendant's ·purse, which was in a linen closet, they found defendant's identification papers and a bottle of Dilaudid. They also found bottles of Preludin, Percodan and Talwin elsewhere in the apartment, along with plastic baggies and a .357 Magnum revolver. Defendant was arrested for possession of narcotics.

St. Paul police put a hold on defendant on Saturday, January 17, and picked her up that day and took her to St. Paul. On Monday, January 19, defendant and four other black women appeared in a lineup viewed by the two eyewitnesses, the pharmacist and a clerk in the store. The pharmacist positively identified defendant as the shorter of the two women; the clerk was unable to identify anyone but later told police that she thought No. 2 (defendant) was one of the robbers.

Following the lineup Sergeant Joseph Pelton of the St. Paul Police Department interviewed defendant, and defendant immediately confessed and informed on her accomplice, Marilyn Oates, who she claimed was the one who had wielded the gun.

Oates was arrested later and positively identified by both the pharmacist and the clerk. Oates also confessed, claiming that defendant was the one who had "masterminded" the robbery and wielded the gun.

As we indicated, the trial court denied defendant's motion to suppress and, after defendant waived her right to a jury trial, found her guilty of one count of aggravated robbery and sentenced her to the 36-month prison term.

These appeals followed.

1. Defendant's first contention is that the affidavit failed to establish the credibility of the informant and that therefore the search warrant, which was based on the informant's tip, was improperly issued.

■ In *State v. Boerner*, 260 N.W.2d 564, 566 (Minn.1977), we summarized the approach of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and related cases, as follows:

Basically, the approach that is required by these cases is the so-called two-pronged analysis. That is, when a determination must be made whether there is or was probable cause to arrest or search partly on the basis of hearsay information, one must determine the reliability of the manner in which the informant obtained his information and the credibility of the informant or the reliability of his information. After measuring the informant's report against these standards in order to assess its probative value, the determination then can be made whether there is or was probable cause to arrest or search.

In this case the defendant's concern is with whether the veracity prong of the two-prong *Aguilar* test was met. We hold that it was.

Since the police did not try to establish that the informant was a so-called citizen informer—that is, an ordinary citizen with no connection with the criminal underworld—the credibility of the informant could not be presumed. One of the common ways of establishing the veracity of an in-

formant such as the one in this case is by showing that he has a track record of past performance as an informant. The cases are clear that a declaration by the affiant that the informant has provided information which led to convictions is sufficient to establish the informant's veracity. There is disagreement in the cases whether a declaration that the informant has provided information which led to arrests will suffice. Professor LaFave argues that "the better view" is that "a bald assertion that the informant's prior information prompted the police to make one or more arrests will not suffice to establish the informer's credibility." 1 W. LaFave, Search and Seizure § 3.3(b), at 514 (1978). However, he adds that "a determination of the informant's credibility could properly be made where it is revealed not simply that arrests were made, but rather that the prior information led to 'arrests and prosecutions' * * *." *Id.*

In this case the affidavit stated that the informant had provided "information which led Agent Bollenburg to three prior felony cases." It is not clear to us what Sergeant Johnson meant by this. It could mean that the information led to three arrests or could mean that it led to three prosecutions. If the former, then it is arguable that more was needed to establish the informant's credibility.

Fortunately, we need not construe the language because we are satisfied that the informant's credibility or veracity was sufficiently corroborated in other ways.

Minnesota cases dealing with corroboration include *State v. Siegfried*, 274 N.W.2d 113 (Minn.1978), and *State v. Causey*, 257 N.W.2d 288 (Minn.1977). As stated in Moylan, *Hearsay and Probable Cause: An Aguilar and Spinelli Primer*, 25 Mercer L.Rev. 741, 778 (1974), "How much verification is needed * * * depends upon how far short of *Aguilar's* threshold the initial recitation fails." For a full analysis, see 1 W. LaFave, Search and Seizure § 3.3(f) (1978).

In this case the affidavit showed that the police had independently corroborated the informant's tip in a number of ways. They knew that there had been an armed drug-store robbery by two black women in which certain kinds of drugs had been taken. The informant's tip stated that one of the two people in the apartment was a black woman, that there were handguns present, that there were drugs of the same type present, and that he believed the drugs had been obtained in a drugstore robbery. An agent also drove with the informant to the vicinity of the apartment and observed the car driven by the "Greg" described in the tip. A check revealed that the car was registered to Greg Christianson and that he resided at the address in question.

■ We conclude, therefore, that even if the affidavit failed to establish the informant's credibility by adequately showing that he had a track record of past performance as an informant—something which we do not decide—the affidavit contained sufficient other information to establish that the informant was being truthful on this occasion.

2. Defendant's next contention is that the trial court erred in admitting the eyewitness identification testimony of the pharmacist because (a) it was the fruit of an unlawful arrest and (b) it was the product of an unnecessarily suggestive lineup.

The claim that the arrest was illegal is based on the claim that the search warrant affidavit was inadequate, an issue which we have already addressed.

The claim that the lineup was unnecessarily suggestive is based on the fact that the robbers wore tan coats and the fact that defendant was the only participant in the lineup wearing a tan coat, whereas the participants wore brown coats.

■ It would have been fairer to require each of the lineup participants to wear the same coat in the lineup or else have the participants appear without coats. However, even if the lineup is deemed suggestive in this respect, we do not believe that defendant was entitled to have the identification testimony suppressed. The test which we have applied in countless similar cases is the test of *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d

140 (1977), and *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), whether after examining all relevant factors it may be said that the suggestive procedures created a "very substantial likelihood of irreparable misidentification." Our examination of all the relevant facts relating to the identification satisfies us that any suggestiveness in requiring only defendant to wear a tan coat did not create a "very substantial likelihood of irreparable misidentification."

3. Defendant's final contention is that her confession, which she apparently concedes was voluntary, should have been suppressed (a) as the fruit of an unlawful arrest or detention and (b) as having been obtained in violation of her right to counsel.

■ The claim that her arrest was unlawful is based on the claim that the search warrant affidavit was inadequate. We have already addressed that issue. Defendant also claims that she was being detained in violation of the spirit of the so-called 36-hour rule. There is no merit to this contention. Defendant was arrested by Minneapolis police for possession of narcotics. St. Paul police put their hold on her for the robbery on Saturday. That day, being the day of the arrest on that charge, and the following day, Sunday, must be excluded in computing the 36-hour period provided in Minn.R.Crim.P. 4.02, subd. 5(1). Police held the lineup and obtained the confession both on Monday, well within the 36-hour period.

■ Defendant's contention that the confession was obtained in violation of her right to counsel was based on the failure of the police to contact the public defender's representative at the lineup before questioning defendant.

In *State v. Sufka*, 295 N.W.2d 665 (Minn. 1980), we discussed in detail the different approaches taken in dealing with interrogation in the Fifth Amendment or *Miranda* context and interrogation in the Sixth Amendment right-to-counsel context. Recently, we summarized what we said in *Sufka* as follows:

> [T]he right to counsel does not attach until formal adversary proceedings have been commenced. Until then, the police may engage in certain types of interrogation such as general on-the-scene interrogation, as well as questioning like that applied in *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), without giving a *Miranda* warning. They also may engage in other types of interrogation provided the *Miranda* warning is given and an effective waiver obtained. After the sixth amendment right attaches, whether or not the defendant has retained an attorney, the state may not deliberately elicit incriminating statements either openly or surreptitiously without first obtaining a waiver.

*Matter of Welfare of M. A.*, 310 N.W.2d 699, 701 (Minn.1981).

Defendant raises the issue of the effect of legal representation by counsel before formal procedings have been commenced. We need not address this issue because defendant was not represented by counsel at the time the confession was obtained.[1]

Defendant's claim that she was represented is based on the fact that there was an attorney from the public defender's staff present at the lineup. Defendant contends that this fact shows that she was already being represented by the public defender's office.

Minn.Stat. § 611.18 (1980) authorizes preappearance representation by the public defender of any person who appears to be financially unable to obtain counsel upon the request of that person. In *State v. Reilly*, 269 N.W.2d 343, 349 (Minn.1978), we interpreted and applied this statute, upholding the admissibility of a confession obtained from an uncharged defendant notwithstanding the fact that the public defender sought and was refused permission by the

---

1. For a discussion of this issue, see Y. Kamisar, *What Is "Interrogation"? When Does It Mat-* *ter?* 67 Geo.L.J. 1, 91–99 (1978).

police to speak with the defendant before the defendant talked with the police. We reasoned that under the statute the public defender cannot be "retained" absent a request by the defendant.

In this case the presence of the attorney from the public defender's office at the lineup was apparently in response to a routine request by the police. Defendant apparently was unaware that the attorney was there and she at no time requested an attorney. Thus, as in *Reilly*, defendant was unrepresented by counsel at the time the police questioned her. This, therefore, must be treated as a normal case of police interrogation of a person in custody before her Sixth Amendment right-to-counsel attached. Since *Miranda* was complied with, the admissibility of the confession was proper.

■ 4. The remaining issue, the propriety of sentencing departure, is raised by the state in its separate but consolidated appeal.

As we stated earlier, the presumptive sentence for aggravated robbery (severity level VII) by one with defendant's criminal history score (three) is an executed term of 49 months in prison. In its formal departure report, where it justified the executed term of 36 months in prison, the trial court stated:

> The reasons for the departure with respect to the sentence are simply that in the opinion of the Court the sentence of 36 months was much more realistic than a sentence of 49 months.

> This defendant has three children who can remain with the grandmother while the defendant is incarcerated but hopefully will be reunited with their mother at a later date. Because of Social Security benefits derived as a result of her husband's death, [defendant] is in a position to maintain a family for herself and the three children.

> Apart from that background, it appears that the defendant was extremely cooperative with the police. This is a matter that resulted in the conviction of the more aggressive member of the team

that committed this offense. It was the cooperation of this defendant that allowed the investigation, the charge, and the trial to go forward resulting in the conviction of Marilyn Oates. She seemed to be genuinely remorseful and also was by far the more passive member of the team that committed the offense. There is no indication that she in any way was the aggressor.

Whether or not the defendant played a passive role in the offense is the type of factual issue best decided at the trial court level in most cases. Here the trial court also acted as trier of fact on the issue of guilt or innocence, and, therefore, clearly was in the best position to decide this issue. Since departure was justified on this ground, we need not decide in this case whether a person's parentage may be a mitigating factor or whether it is a social factor excluded from consideration. *See* Minnesota Sentencing Guidelines and Commentary, II.D.1.(d) (1980). Similarly, we do not address the issue whether a defendant's cooperation with the police is a mitigating factor.

Affirmed.