**STATE of Minnesota, Respondent,**

v.

**Michael Leo FRANK, Appellant.**

**No. C5-87-1071.**

Court of Appeals of Minnesota.

Dec. 15, 1987.

Review Denied Feb. 8, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Michael Richardson, Asst. Co. Attys., Minneapolis, for respondent.

C. Paul Jones, Public Defender, Marie Wolf, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by WOZNIAK, P.J., and FOLEY and CRIPPEN, JJ., with oral argument waived.

## OPINION

WOZNIAK, Chief Judge.

In this appeal, Michael Leo Frank challenges his 162–month sentences for kidnap-

ping and first degree criminal sexual conduct. He contends that there were no substantial and aggravating circumstances present which justified a greater than double departure from the presumptive sentence. He also maintains that he is entitled to the vacation of his conviction and sentence for second degree assault. We affirm in part and reverse in part.

## FACTS

On March 13, 1987, appellant Michael Leo Frank and two co-defendants were sentenced for their actions which occurred August 6, 1986. Their sentences were substantial upward departures from the Minnesota Sentencing Guidelines. This appeal is a companion to *State v. Strommen,* 411 N.W.2d 540 (Minn.Ct.App.1987). Both stem from the same events.

In the early morning of August 6, 1986, Frank met co-defendants Lonnie Strommen and Michael Franson at a bar in St. Louis Park, Minnesota. The three men accepted an invitation to a party as they left the bar. The party was attended by the victim, T.S., then age sixteen.

At approximately 1:30 a.m., the victim briefly met the three men. Frank admitted and the trial court found the defendants then planned to "gang rape" T.S. Strommen engaged T.S. in conversation outside the residence. She accompanied Strommen to his automobile, and agreed to sit inside the car and "do coke." The victim sat in the front seat of the vehicle next to Strommen, whereupon Frank and Franson entered the car.

Strommen immediately drove the car away from the party over the victim's objections. When she tried escaping from the vehicle, Franson restrained T.S. by holding a knife to her throat, choking her so she fainted for short periods, and by punching her in the face. As they drove, Frank and Franson forcibly removed the victim's blouse and pants and pushed her into the vehicle's rear seat. Franson, then in the rear of the car, removed T.S.'s underclothes and forcibly penetrated T.S. vaginally without her consent. After this, Franson again punched T.S. in the face

several times making her submit to oral penetration.

At some point, Strommen stopped the vehicle and turned the driving over to Frank. Strommen exchanged seats with Franson and then forced T.S. to have vaginal intercourse followed by oral sex, after which Franson joined Strommen in the rear of the car. T.S. was forced to lie on top of Franson and submit to vaginal intercourse with him. Simultaneously, Strommen penetrated the victim anally despite her protestations of being hurt.

During these sexual acts, Frank drove the vehicle for approximately one to two hours, eventually reaching Rice County, Minnesota and stopping by a cornfield. When Strommen and Franson got out of the car, Frank entered the back seat and had vaginal intercourse with the victim.

Afterwards, Franson dragged T.S. to a ditch where he forcibly penetrated her anally. Following the final sexual act, Franson repeatedly beat the victim about the face with his fists, dazing her.

Meanwhile, Strommen and Frank got back into the vehicle and started it. Threats were made to leave Franson behind, causing him to leave the victim and join the other two men. At approximately 4:30 a.m., three hours after the kidnapping, the men left their naked victim in the ditch, injured and in a semi-conscious state, and drove away. Frank threw her clothing from the vehicle after the defendants left the scene.

The victim testified she was afraid the men would return to "try to get rid of [her] because [she] could identify them." T.S. ran into the cornfield to escape and eventually received help from a woman in a farm house who contacted the police.

T.S. said that only Franson used the knife to frighten her and only he beat her. Frank admitted he did not try to prevent the multiple rapes and beatings by his co-defendants. He did not stop the car to help T.S., and he made no attempt to get help for her after she was left in the cornfield even though she may have been dead or seriously injured.

As a result of the beatings, T.S. suffered bruises and scrapes on her back, cuts on her neck, two black eyes, bleeding in her eyes, and a swollen face and tongue which made it difficult for her to speak and eat for two weeks. She also sustained a laceration on the right side of her face requiring 6–8 stitches which resulted in a permanent scar. Additionally, she suffered psychological trauma. T.S. testified she was afraid of being alone. Her mother's testimony corroborated this. T.S. locked and barricaded the doors of the family home when alone and carried a knife to protect herself. Further, her relationship with her schoolmates was adversely affected. She told the court:

> I was really upset about going to school because I knew people would stare at me and talk about [the rape] and I felt uncomfortable around my friends because I knew they were treating me differently than before.

In addition, the victim's mother testified that T.S.'s school work had declined; that the victim had trouble sleeping; and that she was depressed. The serious and permanent nature of her injuries was not questioned by Frank.

Subsequently, Frank was arrested and made a confession which led to Strommen's arrest. After his arrest, Frank was cooperative with the investigating authorities, testifying that the defendants planned in advance to kidnap and gang rape T.S.

Frank was sentenced to concurrent sentences of 162 months for kidnapping pursuant to Minn.Stat. §§ 609.25, subd. 1(3), 2(2) (1986), and 609.05 (1983); 36 months for assault in the second degree, pursuant to Minn.Stat. §§ 609.222 (1985), 609.11 (1985), and 609.05; and 162 months for criminal sexual conduct in the first degree, pursuant to Minn.Stat. §§ 609.342, subd. 1(c), subd. 2 (1986), and 609.05.

These sentences constituted an upward departure from the presumptive sentences of 43 months, 24 months and 43 months, respectively, as established by the Minnesota Sentencing Guidelines. After pronouncing sentence, the trial judge noted the following severe and aggravating circumstances which justified the upward departure:

> The aggravating circumstances are 1) the victim was submitted to many multiple different forms of sexual penetration. However, it must be said in this case that defendant was involved in only one of those; 2) that the victim was treated with particular cruelty; that she suffered serious psychological damages and permanent injury and that this defendant, being the driver for over two hours, drove around Hennepin County and also down to Rice County, seeing and hearing within inches the victim being beaten, violated, did nothing but press his foot to the pedal so that it could continue and continue and continue.

The court did not provide written reasons to explain the upward deviation from the presumptive sentence.

## ISSUES

1. Does the record contain evidence of substantial and aggravating circumstances justifying a durational departure of greater than double the presumptive sentence established by the Minnesota Sentencing Guidelines?

2. Is appellant entitled to vacation of his conviction for second degree assault pursuant to Minn.Stat. § 609.04?

3. Is appellant entitled to vacation of his sentence for second degree assault under Minn.Stat. § 609.035?

## ANALYSIS

### I.

Frank contends his actions do not justify a durational departure of greater than double the presumptive sentence established by the Minnesota Sentencing Guidelines. We disagree. While Frank's sentence was 3.76 times that of the guidelines, the broad discretion of the trial court will not be disturbed unless there is a "strong feeling that the sanction imposed exceeds * * * the severity of the offense." *State v. Schantzen*, 308 N.W.2d 484, 487 (Minn. 1981).

A sentencing court is required to utilize the presumptive sentence provided in the sentencing guidelines unless the individual case involves substantial and compelling circumstances.

Minnesota Sentencing Guidelines II.D.; *State v. Garcia*, 302 N.W.2d 643, 647 (Minn.1981). Sentencing departures are to be supported by written reasons specifying the substantial and compelling nature of the circumstances and why the selected sentence is more appropriate, reasonable, or equitable than the presumptive sentence. *Id.* Also, a court considering a durational departure must examine whether the defendant's conduct was "significantly more or less serious than that typically involved in the commission of *the crime in question.*" *State v. Cox*, 343 N.W.2d 641, 643 (Minn.1984) (emphasis added).

Frank repeatedly claims his conduct was less serious than that of either Franson or Strommen and therefore his sentence should be reduced. This argument is without merit for two reasons. First, the *Cox* standard for evaluating a defendant's conduct is "that [conduct] typically involved in the commission of the crime in question," and *not* the conduct of a party's co-defendants. *Id.* at 643. Second, Frank's role was not "minor or passive." *See* Minn. Sentencing Guidelines II.D.103.2.a.(2).

Aggravating circumstances may warrant up to a double durational departure from the maximum presumptive sentence. *State v. Evans*, 311 N.W.2d 481 (Minn.1981). However,

> there may well be rare cases in which the facts are so unusually compelling that an even greater degree of departure will be justified.

*Id.* at 483. *See, e.g., State v. Mesich*, 396 N.W.2d 46 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Jan. 2, 1987) (sentence for criminal sexual conduct in the first degree nearly 5.5 times the presumptive sentence affirmed).

At the time of sentencing, Frank's criminal history score was zero, making the presumptive sentence for his sex offense (severity level VIII) 43 months. The sentencing court found the aggravating circumstances in this case warranted more than a double departure, and Frank received a 162–month sentence.

■ The trial court did not file the required sentencing report explaining its upward deviation of 3.76 times the presumptive sentence. However, the record contained a statement outlining aggravating factors the judge considered severe enough to justify the departure. In *State v. Martinez*, 319 N.W.2d 699 (Minn.1982), where it was argued that a sentence should be vacated because a sentencing report was not filed in a timely manner, the supreme court stated:

> Even if the report was filed late (and it does not appear that it was), the court's statements on the record at the time of sentencing adequately explained the court's reasoning.

*Id.* at 700.

■ The district court determined that the victim was treated with particular cruelty which is an aggravating factor permitting upward deviation from the presumptive sentence. Minnesota Sentencing Guidelines II.D.2.b.(2). Upon review of the record, the aggravating factors in this case may be categorized as follows:

1. *Vulnerability of victim*

T.S., at 16, was particularly vulnerable because of her youth.

2. *State of mind of defendant*

Frank testified, and the court found, that a "gang rape" was planned after defendants briefly met the victim. T.S. testified an offer of cocaine was used to entice her to join Strommen in his automobile. Frank showed no concern for her welfare either during the incidents or after she was abandoned.

3. *Kidnap*

T.S. was taken from a residential area while trapped in a vehicle with three strangers. She was forcibly detained, driven around for up to three hours, raped, beaten, and dumped naked in a remote cornfield at 4:30 a.m. Frank did most of

the driving, but made no attempt to set the victim free.

#### 4. *Multiple defendants and multiple penetrations*

All three defendants raped T.S. She was subjected to multiple penetrations. She also was forced to submit to simultaneous penetration by two men. While Frank only was involved in one form of penetration, at no point did he try to restrain the co-defendants.

#### 5. *Assault*

T.S.'s clothes were torn off by Frank and Franson. Franson also held a knife to the victim's throat. Furthermore, she was choked until she fainted. Choking of the victim was considered a severe circumstance which justified a more than double departure from the presumptive sentence in *State v. Mesich*, 396 N.W.2d at 52. Additionally, T.S. repeatedly was punched in the face to make her submit to the rapists' demands.

#### 6. *State of mind of victim*

Defendants terrorized T.S. for up to three hours. After the co-defendants dumped her naked by a remote cornfield at 4:30 a.m. where she could have died, she was terrified they would return and kill her. Frank did not return the victim's clothes. He could have thrown them to her from the car; instead he chose to discard them after leaving the scene.

#### 7. *Injuries*

That the victim suffered permanent psychological and physical injury was undisputed. Physical and psychological injury are severely aggravating circumstances for sentencing purposes. *See, e.g., State v. Mortland*, 399 N.W.2d 92, 95 (Minn.1987); *State v. Mesich*, 396 N.W.2d at 53.

#### 8. *Mitigating Factors*

Frank claims the presence of several mitigating factors precludes him from receiving a greater than double sentence. Under Minn.Stat. § 609.05, Frank was legally responsible for the actions of his co-defendants. *State v. Jones*, 328 N.W.2d 736, 738 (Minn.1983).

Frank first argues that he did not possess, use, or even see a weapon during the incident and that he did not inflict physical injury on the victim. Therefore, he argues he should receive no more than double the presumptive sentence of 43 months. However, Frank also testified that he never came to the victim's aid during the assaults and rapes.

Frank next claims his cooperation with the police is a mitigating circumstance, citing *State v. Carson*, 320 N.W.2d 432 (Minn. 1982). While the trial court in *Carson* cited cooperation with the authorities as a mitigating factor, the issue was not reached by the supreme court. *Id.* at 438.

Frank also cites his remorse as a mitigating factor. However, the Minnesota Supreme Court has determined

> [A]s a general rule, a defendant's remorse bears only on a decision whether or not to depart dispositionally, not to depart durationally or with respect to consecutive service.

*State v. Back*, 341 N.W.2d 273, 275 (Minn. 1983).

Finally, Frank maintains that his minor or passive role in the crime is a mitigating factor. The supreme court also has held:

> Whether or not the defendant played a passive role in the offense is the type of factual issue best decided at the trial court level in most cases.

*Carson* at 438. The trial court did not find Frank played a "passive role" in these incidents.

Considering the brutal nature of the crime and the callous attitude toward the victim exhibited by Frank, this court is not convinced that the sanction imposed exceeded the severity of the offense committed.

#### II.

Frank claims that his assault conviction should be vacated pursuant to Minn.Stat. § 609.04. We disagree.

Frank did not challenge his conviction or sentence for assault at the trial court level. The protection of Minn.Stat. § 609.04 from multiple convictions for the same conduct is not waived through lack of previous presentation. *Ture v. State*, 353 N.W.2d 518, 523 (Minn.1984). However, second degree assault requires use of a dangerous weapon and is not necessarily a lesser-included offense of first degree criminal sexual conduct. Therefore, the assault conviction need not be vacated. *See* Minn. Stat. §§ 609.342, subd. 1(c), 609.222, and 609.04, subd. 1. *See also State v. Gerring*, 378 N.W.2d 94, 98 (Minn.Ct.App.1985).

### III.

Frank also maintains that because the convictions involved a single victim in the same behavioral episode, separate sentences were impermissible for all three counts under Minn.Stat. § 609.035. We agree. That the sentencing issue was not raised in the trial court is not determinative; the protection of section 609.035 against multiple punishment[1] "cannot be waived" in that manner. *Ture*, 353 N.W.2d at 523 (Minn.1984). The statute provides that a party whose conduct constitutes more than one criminal offense may be punished for only one of those offenses. The only exception relevant to this case is kidnapping.[2] *See* Minn.Stat. § 609.251.

A party's actions constitute only one offense if the court finds "the underlying conduct was motivated by a desire on the defendant's part to obtain a single criminal objective." *Langdon v. State*, 375 N.W.2d 474, 476 (Minn.1985). To obtain multiple sentences, "[t]he state has the burden of establishing that the offenses were not part of a single behavioral incident." *State v. Gilbertson*, 323 N.W.2d 810, 812 (Minn. 1982).

In this case, both Frank's conduct and his own admission indicate that he and his co-defendants contemplated sexual misconduct and that the assaults were a means to this end. The state's argument did not attempt to show Frank's offenses were not part of a single behavioral incident. Without such a showing, imposition of multiple sentences in this case was inappropriate.

### DECISION

The evidence of substantial and aggravating circumstances contained in the record is sufficient to support the trial court's durational departure. Appellant is entitled to vacation of his sentence, but not his conviction, for second degree assault.

Affirmed in part and reversed in part.

---

1. The multiple punishment protection offered by Minn.Stat. § 609.035 "refers not to multiple convictions but multiple sentences and any multiple sentences, including concurrent sentences, are barred if Section 609.035 applies." *State v. Boley*, 299 N.W.2d 924, 925 (Minn.1980) (citing *State v. Hagen*, 275 N.W.2d 49 (Minn.1979)).

2. The kidnapping exception was incorporated into the statute in 1983. Appellant relies on *State v. Koonsman*, 281 N.W.2d 487 (Minn.1979) and similar cases in his section 609.035 argument. However, *Koonsman* was decided prior to the amendment of Minn.Stat. § 609.035.