**STATE of Minnesota, Respondent,**

v.

**Valdez Sid GRAHAM, Appellant.**

**No. C5–87–289.**

Court of Appeals of Minnesota.

Aug. 18, 1987.

Review Denied Sept. 30, 1987.

Hubert H. Humphrey, III, Atty. Gen., Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Marie L. Wolf, Asst. Public Defender, Minneapolis, for Valdez Sid Graham.

Considered and decided by PARKER, P.J., and WOZNIAK and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Appellant Valdez Sid Graham entered a guilty plea to a charge of first-degree burglary. He was sentenced to 72 months in prison, or double the presumptive sentence. On appeal he challenges the upward departure from the sentencing guidelines. We affirm.

## FACTS [1]

Stephen J. Mickus is a widowed, 45–year–old English teacher who suffers from muscular dystrophy and has a pacemaker for his heart. His muscular dystrophy was severe enough so that he had a pronounced "waddling" gait, and he also had a stiff neck that caused him to tilt his head.

Early in the evening of July 9, 1986, appellant Graham and two juveniles broke into Mickus' home and demanded money. One of the intruders pointed a gun at Mickus' head and threatened his life. As the intruders led Mickus into a bedroom, he pleaded, "Don't hurt me—I'm handicapped. Take the money or just go, and don't hurt me." Upon entering the bedroom, Graham attempted to force Mickus into a closet, but was unable to open the closet door. The men then ordered Mickus to lie on the floor and proceeded to hit and kick him in the ribs and the head.

The intruders ransacked Mickus' drawers and pulled the mattresses off his beds. They stole some money, a watch and some jewelry. They also moved a microwave oven, a television and a VCR to the front door before fleeing from the scene when the police arrived. Graham's cohorts were captured by the police shortly thereafter, and Graham was found hiding under a car in a nearby garage a few hours later.

As a result of the assault, Mickus sustained a cut eye, a black eye, sore ribs and a sore back. Two days later, Mickus suffered a stroke and was admitted to Fairview Hospital. After examining and treating Mickus, neurologist David L. Webster testified that his stroke was most likely caused by the head trauma he suffered during the attack. Dr. Webster also testified that Mickus' muscular dystrophy adversely affected his ability to recuperate: "He already was starting out with muscles that were weakened and now he has muscles that are partially paralyzed as well and the combination has been a very bad combination for him. * * * [He] has not recovered as well from the stroke as someone in the identical situation who did not have muscular dystrophy to begin with."

Mickus was hospitalized for three weeks after his stroke and was then transferred to the Sister Kenny Institute for an additional four weeks of treatment. A physical therapist now comes to his home three times a week. Before the burglary, Mickus could drive a car, walk on his own and take care of himself and his 12–year–old daughter. Now he can do none of those things. He has a paralyzed right arm and leg, is confined to a wheelchair, cannot get dressed or go to the bathroom without help, cannot drive, and has problems speaking and comprehending what he reads. He also has been forced to remodel his bathroom extensively and install a ramp on his front door. His prognosis is poor and his

1. This appeal arises from the same set of facts as *State v. Watts,* —— N.W.2d ——, C5-87-406

(Minn.Ct.App. ——— —, 1987).

injuries may prevent him from returning to his teaching position.

Graham was originally charged with first-degree burglary, Minn.Stat. §§ 609.-582, subd. 1(b) and 1(c) (1986), and aggravated robbery, Minn.Stat. §§ 609.245, 609.11 and 609.05 (1986). He eventually entered a guilty plea for the burglary charge. At the sentencing hearing Graham requested a downward departure from the presumptive 36–month sentence, citing his amenability to probation and his passive role in the burglary. The State requested a triple upward departure to 108 months.

Graham was sentenced to a 72–month prison term, or double the presumptive sentence. The sentencing judge gave the following reasons for the upward departure:

[T]he first reason is that the victim was obviously handicapped and particularly vulnerable due to his handicap.

Second, he was treated with particular cruelty and gratuitous violence despite his handicap.

Three, he was threatened with being killed.

And four, he was attacked in his own home.

And five, that he suffered considerable injury and some of the injuries appear to be permanent and have resulted in devastating financial loss and emotional and other kinds of loss that he has sustained.

Regardless of the sentence imposed, I suppose I should also say that I can do nothing to bring back Mr. Mickus' health. I wish I could.

Graham appeals.

## ISSUE

Did the sentencing court abuse its discretion by imposing double the presumptive sentence?

## DISCUSSION

When substantial and compelling factors are present, a sentencing judge may "impose a sentence that is deemed to be more appropriate, reasonable, or equitable than the presumptive sentence." * * * The trial court is accorded broad discretion and we will not interfere absent a "strong feeling

that the sanction imposed exceeds or is less than that 'proportional to the severity of the offense of conviction and the extent of the offender's criminal history.'"
*State v. Schroeder,* 401 N.W.2d 671, 674 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Apr. 23, 1987). Generally, when aggravating circumstances are present, the upward limit on a durational departure is double the maximum presumptive sentence duration. *State v. Evans,* 311 N.W.2d 481 (Minn.1981).

Graham claims the trial court should not have increased his sentence because he was a "passive" participant in the burglary. Even if Graham were a passive participant in the burglary, it is well-established that a defendant may receive an enhanced sentence for acts he did not personally commit. Minn.Stat. § 609.05, subd. (1) (1986), provides that "[a] person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Accordingly, in both *State v. Jones,* 328 N.W.2d 736, 738 (Minn.1983), and *State v. Campbell,* 367 N.W.2d 454, 461 (Minn. 1985), the supreme court held that upward departures were justified although the defendants were merely passive participants in the crimes.

Graham also notes that *Campbell* and other decisions indicate that appellate courts will give deference to the trial court's assessment of the defendant's passive or active role in the crime. *See id.* (whether defendant played a passive role in the offense is the type of factual issue best decided, in most cases, at the trial court level). In the present case, however, the sentencing court found that Graham was *not* a passive participant in the crime.

The sentencing court gave five reasons for the double upward departure, and each reason was valid. Most significantly, Mickus was particularly vulnerable, given the fact that he was handicapped. Even if Mickus' impairments were not evident, the assailants certainly were aware of his condition after he told them he was handicapped. A victim's vulnerability is one of the aggravating factors expressly noted in the sentencing guidelines and has also

formed the basis of upward departures in many prior decisions. Minnesota Sentencing Guidelines II.D.2.b.(3); *see, e.g., State v. Wickstrom,* 405 N.W.2d 1 (Minn.Ct.App. 1987), *pet. for rev. denied* (Minn. June 30, 1987).

The upward departure was also justified due to the particular cruelty involved, the threat on Mickus' life, the fact that the assailants invaded Mickus' own home, and the permanent injuries he suffered as a result of the beating. These factors all may form the basis for an upward departures. *See, e.g., State v. Franson,* 403 N.W.2d 920, 923 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. June 25, 1987) (particular cruelty); *State v. Evans,* 311 N.W.2d 481, 482 (Minn.1981) (vulnerability of victims); *State v. Back,* 341 N.W.2d 273, 277 (Minn.1983) (intrusion into victim's home); *State v. Van Gorden,* 326 N.W.2d 633, 635 (Minn.1982) (permanent injuries).

An upward departure is justified when the defendant's conduct is "significantly more * * * serious than that typically involved in the commission of the crime in question." *State v. Cox,* 343 N.W.2d 641, 643 (Minn.1984). First-degree burglary requires an unconsented entry into a building with intent to commit a crime, along with one of three additional factors: the presence of an innocent person in the dwelling, the possession of a dangerous weapon, or an accompanying assault. Minn.Stat. § 609.582, subd. 1. Here, all three factors were present. Mickus was home when the intruders broke into his house, the intruders possessed a gun, and they assaulted Mickus during the burglary. Therefore, this first-degree burglary was significantly more serious than most, and the upward departure was justified.

## DECISION

The trial court did not abuse its discretion in sentencing the defendant to double the presumptive sentence.

Affirmed.