STATE of Minnesota, Appellant,

v.

Randall Samuel STEMPFLEY, Respondent.

A15-1247
A15-1255

Supreme Court of Minnesota.

Filed: August 16, 2017

role in the crime cannot be used to support a dispositional departure. We affirm.

## FACTS

On October 30, 2012, B.D., age 14, was visiting friends in Bena. Tina Smith, then 24 years old, arrived and invited B.D. to come drink alcohol with her across the street at Smith's grandmother's house. B.D. and a friend accepted the invitation and drank from a bottle of rum with Smith and her boyfriend, Stempfley, who was 38 years old. Eventually B.D. and her friend both left. Before they left, Smith told B.D. to call her later, giving her Stempfley's phone number. Smith answered when B.D. called about 30 minutes later, and invited B.D. to a cabin rented by Stempfley.

Late that night, B.D. walked about a half mile to the cabin, a single-room dwelling furnished with a bed and a futon. B.D., Smith, and Stempfley drank from a liter bottle of rum that Stempfley had purchased.[1] No one else was present. B.D. estimated that she consumed 10 or 11 shots of rum. After about two hours of drinking, Stempfley and Smith began kissing on the bed. B.D. remained on the other side of the bed and texted on her phone. B.D. eventually moved to the futon. Later, when Stempfley and Smith had stopped kissing and B.D. felt tired, B.D. returned to the bed to lie down.

Accounts conflict, even among the State's witnesses, about what happened next. B.D. testified at trial to the following. Smith got on top of her and began kissing her, pulled her pants down, and engaged in oral sex. B.D. told Smith, "[Y]ou need to stop. This is weird." She testified that while this occurred, Stempfley was lying next to them on the bed. At some point, B.D. testified, Stempfley held one or both

Lori Swanson, Attorney General, Saint Paul, Minnesota; Christopher J. Strandlie, Cass County Attorney, Walker, Minnesota; and Scott A. Hersey, Special Assistant County Attorney, Saint Paul, Minnesota, for appellant.

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, Saint Paul, Minnesota, for respondent.

## OPINION

CHUTICH, Justice.

A jury acquitted respondent Randall Samuel Stempfley of third- and fourth-degree criminal sexual conduct as a principal, but found him guilty of third- and fourth-degree criminal sexual conduct on an accomplice-liability theory. At sentencing, Stempfley moved for a downward dispositional departure, arguing in part that he played a "minor or passive role" in the crime. The district court granted Stempfley's motion, stayed execution of a 140-month sentence for 15 years, and required Stempfley to comply with numerous probationary conditions. A divided panel of the court of appeals affirmed.

The State petitioned for review, arguing that the district court did not make findings of fact on the departure grounds and, alternatively, that the record does not support the district court's finding that Stempfley played a minor or passive role in the crime. The State does not argue that the sentencing factor of a minor or passive

---

1. Smith testified that she did not see Stempfley drinking out of the bottle of rum and that only she and B.D. shared it. B.D. testified that all three of them were drinking from the bottle.

of her hands and penetrated her vagina with his fingers. B.D. testified that Stempfley's arms were over her; he was "holding one hand"; and that she was "weirded out," "was trying to get them off [her],", and "was trying to grab [her] clothes." According to B.D., while Stempfley continued to hold her hand, Smith penetrated B.D.'s vagina with her tongue. B.D. testified that she was scared.

On cross-examination, B.D. admitted telling a friend that she did not "remember much of what happened." She also testified that she did not remember how her clothes were removed and that it was "possible" that she had removed them herself. The State also entered into evidence at trial a recording of a statement that B.D. gave to the Cass County Sheriff's Office shortly after the assault. In that statement, B.D. said that she got on the bed to lie down. She blacked out, and when she awoke, Stempfley was holding her hands down while Smith was "going down" on her. She stated that Smith then held her hands while Stempfley digitally penetrated her.

Smith testified for the State at Stempfley's trial.[2] Her account differed from B.D.'s. According to Smith, when she and B.D. started kissing, B.D. was not wearing a shirt; then B.D. took off her own pants and eventually all of her clothes. B.D. kissed Smith as well and did not resist or say no. Stempfley was on the bed next to them, and while Smith engaged in oral sex with B.D., Smith "asked him to grab [B.D's] arms and he did." When asked why she wanted Stempfley to hold B.D.'s arms, Smith replied, "I don't know." She testified that, other than holding her arms, Stempfley did not touch B.D., and that neither Smith nor Stempfley used force against B.D.

During cross-examination, defense counsel used a statement that Smith had given to the Sheriff's Office to impeach her testimony. In that statement, Smith said that Stempfley did not hold B.D.'s arms. When asked at trial to explain the discrepancy between her prior statement and her trial testimony, Smith testified that her earlier statement was intended to protect Stempfley, who was her boyfriend at the time.

Stempfley did not testify at the trial, but he did give a recorded statement to the Sheriff's Office three days after the events at the cabin, which the State entered into evidence and played for the jury at trial. He told investigators that when Smith and B.D. started kissing, he rolled over to the other side of the bed and watched television. Stempfley also stated that he was uncomfortable with having B.D. at the cabin because she had told him and Smith that she was 15 years old.

B.D. and Smith both testified that the three eventually fell asleep on the bed. The next day, B.D. was unable to find a ride home until early afternoon, so she spent the morning with Smith and Stempfley. B.D. testified that Stempfley said to her, "Oh, wow! That was a crazy night. That was so fun."

Two days later, B.D. went to school. She used a phone in the school's office to call her mother, and a school employee overheard her describing the assault. The employee reported the incident, which led to criminal charges against Stempfley and Smith.

Stempfley was charged with five counts: (1) third-degree criminal sexual conduct, Minn. Stat. § 609.344, subd. 1(b) (2016) ("sexual penetration with another person

2. Smith pleaded guilty to third-degree criminal sexual conduct before Stempfley's trial

occurred.

... [who] is at least 13 but less than 16 years of age and the actor is more than 24 months older than the complainant"); (2) fourth-degree criminal sexual conduct, Minn. Stat. § 609.345, subd. 1(b) (2016) ("sexual contact with another person ... [who] is at least 13 but less than 16 years of age and the actor is more than 48 months older than the complainant"); (3) furnishing alcohol to a person under 21 years old, Minn. Stat. § 340A.503, subd. 2(1) (2016); (4) aiding and abetting third-degree criminal sexual conduct, Minn. Stat. § 609.344, subd. 1(b); see Minn. Stat. § 609.05, subd. 1 (2016) ("intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime"); and (5) aiding and abetting fourth-degree criminal sexual conduct, Minn. Stat. §§ 609.05, subd. 1, 609.345, subd. 1(b). Stempfley pleaded not guilty to all charges.

The jury acquitted Stempfley of counts 1 and 2, committing criminal sexual conduct as a principal, but found him guilty of counts 4 and 5, third- and fourth-degree criminal sexual conduct as an accomplice. The jury also found Stempfley guilty of furnishing alcohol to a minor.[3]

By finding Stempfley not guilty of criminal sexual conduct as a principal, the jury necessarily found that Stempfley did not engage in either sexual penetration or sexual contact with B.D. See Minn. Stat. §§ 609.341, subds. 11, 12 (2016) (defining "sexual contact" and "sexual penetration"); 609.344, subd. 1(b) (defining third-degree criminal sexual conduct), 609.345, subd. 1(b) (defining fourth-degree criminal sexual conduct). By finding Stempfley guilty of aiding and abetting Smith's acts of sexual penetration and sexual contact, the jury found that he played an "intentional role in aiding" the commission of these crimes and made "no reasonable effort" to prevent them.[4]

Based on Stempfley's criminal history score of six, the Pre-Sentence Investigation Report recommended an executed sentence of 140 months—the presumptive duration—for third-degree criminal sexual conduct. Minn. Sent. Guidelines 4.B. Stempfley's counsel argued, and the State agreed, that the third- and fourth-degree convictions arose out of a single behavioral incident. The State accordingly requested that the court sentence Stempfley for third-degree criminal sexual conduct and sought an executed sentence of 168 months, the upper limit of the presumptive sentencing range. Id.

Stempfley's counsel moved for a downward dispositional departure,[5] arguing that Stempfley played a "minor or passive role" in the crimes and that he "is particularly amenable to probation as shown by his criminal record wherein he has not accumulated significant new crimes for several years."[6] At the sentencing hearing,

---

3. For this offense, the district court sentenced Stempfley to 365 days in jail.

4. The district court instructed the jury that "[t]he defendant is guilty of a crime committed by another person when the defendant has played an intentional role in aiding the commission of the crime and made no reasonable effort to prevent the crime before it was committed."

5. A dispositional departure is one that stays a presumptively executed sentence, or executes a presumptively stayed sentence. See Minn.

Sent. Guidelines 1.B.5.a. A durational departure, by contrast, increases or decreases the length of the presumptive sentence. Id. at 1.B.5.b. As discussed in State v. Solberg, 882 N.W.2d 618, 623 (Minn. 2016), dispositional departures focus on the characteristics of the offender and durational departures focus on the seriousness of the offense itself.

6. According to the Pre-Sentence Investigation Report, the most recent felony in Stempfley's criminal-history report, a third-degree assault, occurred in 2007.

Stempfley's counsel argued that Stempfley's role was minor or passive because "Tina Smith was already doing her act," and, in only holding B.D.'s hand, Stempfley's conduct "didn't seem like it was something that materially added in that endeavor since she was already doing it."

The district court made the following findings:

[T]his was a conviction for an action that it's pretty clear to the Court having dealt with Ms. Smith's case and everything that went on there and then the trial that Ms. Smith was the primary aggressor.

I'm not quite sure what the words that [defense counsel] used, but I liked them when I heard them, and that is basically the train had already left the station before Mr. Stempfley got involved to the extent that he did.

. . . .

Third-degree criminal sexual conduct, the range is 119 to 168, and the middle of the box, as suggested by the folks down south, is 140 months. The Court is going to impose 140 months, but I'm going to stay execution of that absolutely based on the request . . ., the minor or passive role in the crimes.

Had you been found guilty of that, Mr. Stempfley, which is what the jury decided, you would have been looking at the whole thing, but that's not what they found you guilty of at all. They found you guilty of holding one hand. The witness couldn't decide if it was one hand or two, but there was certainly some involvement, and the stay on that 140

months is going to be for a period of 15 years. . . .

The court attached numerous probationary conditions to the stay.[7] For the crime of furnishing alcohol to a minor, the district court sentenced Stempfley to 365 days incarceration and waived the $50 minimum fine.

A divided court of appeals affirmed. *State v. Stempfley*, Nos. A15-1247, A15-1255, 2016 WL 3884326, at *7 (Minn. App. July 18, 2016). The court of appeals held that an offender's minor or passive role is an adequate reason for a downward dispositional departure and that the record supported the district court's finding that Stempfley played a minor or passive role in the third- and fourth-degree criminal sexual conduct. *Id.* at *5. The court noted that the jury found that "Stempfley had no direct sexual contact with B.D."; the record supported the district court's finding that Stempfley became involved only after Smith had initiated the crime; and, although "consent is not a defense [to Stempfley's crime], it matters when considering whether [Stempfley] played a minor or passive role in the offense." *Id.*

## ANALYSIS

### I.

■ We first consider the State's claim that the district court did not make adequate findings of fact to support the departure grounds. The Minnesota Rules of Criminal Procedure, the Minnesota Sentencing Guidelines, and Minnesota Statutes section 244.10, subdivision 2 (2016), all require the district court to make a record of its reasons for any deviation from the

---

7. Among other things, the conditions included the following requirements: (1) submit to a psychosexual evaluation and follow the recommendations from the evaluation; (2) abstain from the use of alcohol or controlled substances; (3) have no contact with Tina Smith, B.D., or the other minor who had accompanied B.D. to Smith's grandmother's house; (4) have no contact with minor females until the recommendations of the psychosexual evaluation are completed; and (5) not use or possess any pornographic material.

Guidelines. Minn. R. Crim. P. 27.03, subd. 4(C) ("[T]he court must make findings of fact supporting the departure."); Minn. Sent. Guidelines 2.D.1.c. ("[T]he court must disclose in writing or on the record the particular substantial and compelling circumstances that make the departure more appropriate than the presumptive sentence."); Minn. Stat. § 244.10, subd. 2 ("[T]he district court shall make written findings of fact as to the reasons for departure from the Sentencing Guidelines in each case in which the court imposes or stays a sentence that deviates from the Sentencing Guidelines applicable to the case.").[8]

Here, the district court made several statements relevant to Stempfley's comparative culpability: "Smith was the primary aggressor," the "train had already left the station before Mr. Stempfley got involved to the extent that he did," and the jury found Stempfley "guilty of holding one hand." The State and the dissent characterize these statements as "offhand" comments that do not rise to the level of factual findings. We disagree. Although these findings could have been more thorough and precise, they nonetheless provide us with the information that we need to undertake a meaningful review of the sentencing decision.[9] Consequently, the district court made adequate findings of fact.[10]

## II.

■ The State argues that the record does not support the district court's finding that Stempfley played a minor or passive role. We disagree.

■ "We review a district court's decision to depart from the presumptive guide-

---

**8.** Here, the district court did not file a departure report. The Guidelines require that the reasons for departure "be stated in the sentencing order or recorded in the departure report and filed with the Commission." Minn. Sent. Guidelines 2.D.1.c. Reporting departures to the Minnesota Sentencing Commission enables careful tracking of departures and furthers the Guidelines' goal of uniformity in sentencing. *See Tucker v. State*, .799 N.W.2d 583, 586 (Minn. 2011). Although failure to file a departure report is not itself sufficient grounds for reversal, we strongly encourage the district courts to file them. *See also* Minn. R. Crim. P. 27.03, subd. 4(C).

**9.** The dissent asserts that the district court's findings were inadequate because they did not demonstrate the existence of "identifiable, substantial, and compelling circumstances" warranting departure. Minn. Sent. Guidelines 2.D.1. But the district court did identify the substantial and compelling circumstances: Stempfley's minor or passive role in the crimes. This reason is explicitly included in the Guidelines' list of "factors that may be used as [a] reason[ ] for departure," *id.* at 2.D.3.a.(2), and has been upheld in our own precedent as a reason for departure, *see State v. Carson*, 320 N.W.2d 432, 434, 438 (Minn.

1982). Thus, when adequately supported by the record, a minor or passive role is an "identifiable, substantial, and compelling" reason for departure.

Certainly, the district court must state on the record those facts that make the offender's role minor or passive, and that is what the district court did here. It identified a substantial and compelling reason for departure—Stempfley's minor or passive role in the crimes—and made findings of fact supporting that reason: Smith was the primary aggressor, she began the assault without Stempfley's assistance or participation, and Stempfley's conduct in "holding one hand" was the basis for the guilty verdict. These findings of fact were the basis for the court's conclusion that Stempfley's role was minor or passive, so we must examine the record to ensure that it contains support for these findings.

**10.** The State, echoing the dissent at the court of appeals, argues that the district court actually relied upon the disparity between the sentence that Smith received and the sentence that the State sought for Stempfley. We take the district court at its word that it stayed Stempfley's sentence based on his "minor or passive role" in the offense and not because of the sentence that Smith received.

lines sentence for an abuse of discretion." *State v. Solberg*, 882 N.W.2d 618, 623 (Minn. 2016) (citation omitted). Under our precedent and the common meaning of "minor" or "passive," the district court did not abuse its discretion in concluding that Stempfley played a minor role in the commission of this crime.

In *State v. Carson*, 320 N.W.2d 432, 438 (Minn. 1982), we upheld a downward durational departure based on the offender's minor or passive role. There, the defendant was one of two women who robbed a drug store. *Id.* at 434. The other woman carried a gun and struck a pharmacist, on the head, while Carson "was more passive." *Id.* We affirmed the district court's downward durational departure for her conviction for aggravated robbery. *Id.* at 438. We stated that "[w]hether or not the defendant played a passive role in the offense is the type of factual issue best decided at the trial court level in most cases." *Id.*

Our analysis in *Carson*, and the common-sense meaning of "minor" and "passive," show that whether a defendant's role in an offense was minor or passive depends on a comparison of the defendant's conduct to the conduct of other participants in the crime. *See id.* at 434, 438; *The American Heritage Dictionary of the English Language* 1122 (5th ed. 2011) (defining "minor," in part, as "[l]esser or smaller in amount, extent, or size"); *id.* at 1289 (defining "passive," in part, as "[a]ccepting or submitting without objection or resistance; submissive"); *see also State v. Bendzula*, 675 N.W.2d 920, 924 n.5 (Minn. App. 2004) (concluding that defendant could not

have played a minor or passive role in the crime because he "was the sole actor").

When we compare Stempfley's role to that of Smith, the record supports the district court's finding that Stempfley played a minor role here. Smith was the one who started drinking with B.D., invited B.D. to the cabin, and initiated the sexual penetration that is the basis for Stempfley's conviction. Stempfley's conduct—not objecting to B.D.'s visit to the cabin or her drinking and holding one or both of B.D.'s hands—was comparatively minor. According to Smith's testimony and the jury's verdict, Stempfley did not have any sexual contact with B.D. Nor did he prompt or encourage Smith to begin sexual contact with B.D. Smith testified that Stempfley did not become involved in Smith's sexual penetration of B.D. until Smith asked him to hold B.D.'s hand, which is consistent with a finding of passivity. These facts are sufficient to support the conclusion that Stempfley's offense was significantly less serious than the typical case.

The State and the dissent assert that Stempfley's role cannot be minor or passive because he prevented B.D.'s escape while the assault occurred. The district court did not find that by holding B.D.'s hand Stempfley prevented her escape, and witness testimony on this issue was conflicting.[11] The district court, which " 'sits with a unique perspective on all stages of a case, ... [was] in the best position to evaluate [Stempfley's] conduct,' " including the question of whether Stempfley prevented B.D.'s escape. *Solberg*, 882 N.W.2d at 626 (quoting *State v. Hough*, 585 N.W.2d 393, 397 (Minn. 1998)). The district

---

11. Smith testified that B.D. kissed her in response and that no force or coercion occurred during the sexual conduct. Further, B.D.'s testimony that she was trying to escape was embedded in a description of Stempfley digi- tally penetrating her. But the jury acquitted Stempfley of engaging in digital penetration, and it is especially difficult to discern on appellate review which parts of B.D.'s testimony the jury might have believed.

court was able to observe the witnesses' testimony and demeanor, as well as any physical gestures that B.D. used to describe Stempfley's conduct. We defer to the district court's decision and refrain from conducting our own factfinding on appeal, especially when the record contains inconsistent evidence.

The State also argues that affirmance here would effectively establish a categorical rule that offenders who are convicted as accomplices will always be entitled to a departure for their minor or passive roles. The law clearly holds otherwise. Accomplices are "legally responsible" for the acts of their codefendants, and a categorical rule that a sentencing departure may rest solely on an offender's status as an accomplice would be inconsistent with that principle. *State v. Campbell*, 367 N.W.2d 454, 461 (Minn. 1985).

Moreover, the State's argument misreads the district court's findings, which refer specifically to the unique facts and circumstances of Stempfley's offense. The district court's findings that Smith was the "primary aggressor" and that she began the sexual penetration "before Mr. Stempfley got involved to the extent that he did" show that the court's departure decision was based upon its review of Stempfley's conduct, not his status as an accomplice. As the law requires, the district court's departure analysis focused on the facts of this particular case. *Cf. State v. Leja*, 684 N.W.2d 442, 452 (Minn. 2004) (stating that when evaluating a durational departure re-

quest, courts should examine "each participant's conduct in relation to the crime").

In sum, we are bound to uphold the district court's evaluation of the facts and its discretionary sentencing decision unless our review of the record reveals an abuse of that discretion. Applying this deferential standard, we conclude that the district court acted within its broad discretion here. The trial testimony is conflicting and must be interpreted in light of the jury's verdict, which rejected a large portion of the State's case. Without the benefit of observing witness testimony and the opportunity to weigh credibility, we cannot say that the district court abused its discretion by finding that Stempfley's minor or passive role in the offense was a substantial and compelling reason to depart from the Guidelines. Even if we might have come to a different conclusion had we been weighing the evidence ourselves, that is not the applicable standard upon appellate review.[12]

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.

MCKEIG, J., took no part in the consideration or decision of this case.

## DISSENT

HUDSON, Justice (dissenting).

Appellate courts rarely interfere with a district court's sentencing decision. In re-

---

12. The State also argues that the court of appeals erred by considering the near-decayed status of two of Stempfley's prior felonies as a factor that "exaggerated" his criminal history score and provided further "support" for the departure. *Stempfley*, 2016 WL 3884326, at *6. When it considered the aged prior felonies, the court of appeals had already decided that the district court's reasons for departure were supported by the record. Thus, the court of appeals' discus-

sion of this issue was dicta. But, to the extent that this language could be read as discounting prior felonies before they reach the 15-year decay threshold specified by the Guidelines, such a view does not reflect the law. *See* Minn. Sent. Guidelines 2.B.1.c.; *see also State v. Bellanger*, 304 N.W.2d 282, 283 (Minn. 1981) ("General disagreement with the Guidelines or the legislative policy on which the Guidelines are based does not justify departure.").

viewing a sentence, we will not "simply substitute our judgment for that of the trial court." *State v. Spain*, 590 N.W.2d 85, 88 (Minn. 1999) (citation omitted). District courts are most often in the "best position" to evaluate whether a sentencing departure is appropriate based on their "unique perspective on all stages of a case." *State v. Hough*, 585 N.W.2d 393, 397 (Minn. 1998). But although the district court is afforded great discretion, it is not a "limitless grant of power." *State v. Warren*, 592 N.W.2d 440, 451 (Minn. 1999). Thus, appellate courts play an important role if a district court abuses its discretion by departing from the presumptive sentence. Minn. Stat. § 244.11, subd. 2(b) (2016) ("On an appeal pursuant to this section, the court may review the sentence imposed or stayed to determine whether the sentence is inconsistent with statutory requirements, unreasonable, inappropriate, excessive, unjustifiably disparate, or not warranted by the findings of fact issued by the district court."). Specifically, "[i]f the reasons given are improper or inadequate and there is insufficient evidence of record to justify the departure, [it] will be reversed." *Williams v. State*, 361 N.W.2d 840, 844 (Minn. 1985). This is such a case. Because I would remand this case for imposition of the presumptive sentence, I respectfully dissent.

## I.

Minnesota Statutes § 244.10, subdivision 2, requires a district court to "make written findings of fact as to the reasons for departure from the Sentencing Guidelines in each case in which the court imposes or stays a sentence that deviates from the Sentencing Guidelines applicable to the case." These findings of fact as to the reasons for departure must demonstrate the existence of "identifiable, substantial, and compelling circumstances" warranting departure. Minn. Sent. Guidelines 2.D.1.

We have said that these findings regarding the reason for departure must " '*demonstrate why* the sentence selected in the departure is more appropriate, reasonable, or equitable than the presumptive sentence.' " *Taylor v. State*, 670 N.W.2d 584, 588 (Minn. 2003) (emphasis added) (quoting Minn. Sent. Guidelines 2.D). Neither we, nor the Legislature, have ever considered the requirement to identify and explain the reasons for departure to be a matter of discretion. *State v. Shattuck*, 704 N.W.2d 131, 153 n.7 (Minn. 2005) (noting that the district court's sentencing discretion is "constrained by the statutory requirement that the court make written findings of fact as to the reasons for departure from the presumptive sentence" (citing Minn. Stat. § 244.10, subd. 2)); *State v. Geller*, 665 N.W.2d 514, 517 (Minn. 2003) (reversing a district court's departure for failure to "state the reasons for departure on the record at the time of sentencing").

To support his position that the district court made adequate factual findings, Stempfley points to a series of colloquial and offhand comments made by the district court at the sentencing hearing. In particular, the district court made three statements that Stempfley contends support his dispositional departure: Smith "was the primary aggressor," Smith "was the one that got things going," and "basically the train had already left the station" when Stempfley got involved. These vague comments by the district court at the sentencing hearing are not sufficient factual findings to sustain a sentencing departure, because these comments provide little insight into what, if any, "identifiable" circumstances make the departure more " 'appropriate, reasonable or equitable than the presumptive sentence.' " *Taylor*, 670 N.W.2d at 588 (quoting Minn. Sent. Guidelines 2.D).

The majority concludes that these off-hand comments constitute factual findings sufficient to sustain a sentencing departure, but not because they outline identifiable, substantial, and compelling factors that "demonstrate why" an alternative sentence is appropriate. *Taylor*, 670 N.W.2d at 588 (quoting Minn. Sent. Guidelines 2.D). Instead, the majority is satisfied that the district court's statements constitute factual findings because the statements are, in some way, helpful to this court in undertaking "a meaningful review of the sentencing decision" on appeal. But this conclusion fails to consider the scope of our review, which *includes* review of whether sufficient findings were made. Minn. Stat. § 244.10, subd. 2 (outlining the statutory requirement that "the district court shall make *findings of fact as to the reasons* for departure" (emphasis added)); Minn. Stat. § 244.11, subd. 2(b) ("[T]he court may review the sentence imposed or stayed to determine *whether the sentence is inconsistent with statutory requirements . . . .*" (emphasis added)); Minn. Sent. Guidelines 2.D.1 (requiring the reasons for departure to demonstrate "identifiable, substantial, and compelling circumstances" rendering

the presumptive sentence inappropriate). Circumventing the requirement that the district court make adequate findings hinders our ability to "undertake a meaningful review" of the sentencing decision, given that our review on appeal *focuses* on whether the district court's stated findings support its sentencing decision. The majority's acknowledgement that the district court's findings were neither "thorough" nor "precise," proves that the district court failed to demonstrate the existence of "identifiable, substantial, and compelling" reasons to support its sentencing departure. Failure to identify and record the circumstances for imposing a sentencing departure as required by statute, case law, and court rules is not an exercise of discretion, but rather an abuse of it. *Williams*, 361 N.W.2d at 844 ("If no reasons for departure are stated on the record at the time of sentencing, no departure will be allowed."); Minn. Sent. Guideline 2.D (defining the requisite circumstances as those that are "identifiable, substantial, and compelling").[1]

## II.

Even if the comments made by the district court during the sentencing hearing

---

1. Moreover, the record demonstrates that the district court was motivated, at least to some degree, to depart from the presumptive sentence because it was troubled by the disproportionate sentences between Stempfley and Smith. The district court questioned the prosecutor about the discrepancy, noting at one point: "So she got 90 days, and she was the primary aggressor." On its own, such comparative considerations may not be improper. But the motivation becomes improper when its sole purpose is to erase the effect of a defendant's criminal history score. Here, Stempfley's criminal history score of 6 was considerably higher than Smith's score of 0. A core principle of the Guidelines is that defendants with high criminal history scores should receive more severe punishments than those with lower criminal history scores. Minn. Sent. Guidelines 1.A. ("The purpose of

the Sentencing Guidelines is to . . . ensure that the sanctions imposed for felony convictions are proportional to the severity of the conviction offense *and the offender's criminal history.*" (emphasis added)) An attempt to circumvent this principle, without more, is not a proper reason for departure from the Guidelines.

The majority counsels that we should take the district court at its word that it stayed Stempfley's sentence for his "minor or passive" role in the offense, rather than the difference in the presumptive sentences mandated by the Guidelines. Fair enough. But on this sparse departure record, the majority would do well to take into account *all* of the district court's words in determining whether the district court abused its discretion by imposing a departure from the presumptive sentence.

are proper factual findings under Minn. Stat. § 244.10, subd. 2, these findings do not justify the district court's departure. We have consistently stated that "[s]ubstantial and compelling circumstances must be present in the record to justify departures from the applicable presumptive sentences." *State v. McIntosh*, 641 N.W.2d 3, 8 (Minn. 2002) (citation omitted). We have defined "[s]ubstantial and compelling circumstances" as "those circumstances that make the facts of a particular case *different from a typical case*." *State v. Peake*, 366 N.W.2d 299, 301 (Minn. 1985) (emphasis added) (citation omitted). While a defendant's "minor or passive" role is a recognized circumstance justifying a dispositional departure when it renders an offense "different from the typical case," Minn. Sent. Guidelines 2.D.3.a(2); *see State v. Carson*, 320 N.W.2d 432, 438 (Minn. 1982), such a departure is not warranted here.

First, "minor or passive" does not accurately characterize Stempfley's role. Although the majority concludes that the district court did not abuse its direction when it determined that Stempfley played a minor or passive role in the sexual assault, the majority's analysis gives short shrift to a key fact in the record: that Stempfley *held down* B.D. to permit Smith to sexually assault B.D. Smith testified that she asked Stempfley to hold down B.D.'s arms, not merely hold B.D.'s hand: "I asked him to grab her arms and he did." B.D. testified that she was restrained while trying to escape: "When I say [Stempfley] was holding my hands, I mean he was holding my hands *down*.... I was trying to get them off me....". (Emphasis added.) For the district court to determine that the evidence supported anything other than the conclusion that Stempfley intervened to prevent B.D. from escaping is inconsistent with the record. Stempfley's intervention, particularly as an adult male

aiding and abetting the sexual assault of a child, *cannot* constitute a minor or passive role. As stated succinctly by Judge Halbrooks in her dissent at the court of appeals, Stempfley was "instrumental" in the sexual assault's continuation. *State v. Stempfley*, Nos. A15-1247, A15-1255, 2016 WL 3884326, at *9 (Minn. App. July 18, 2016) (Halbrooks, J., dissenting). Because the district court's conclusion on this point does not comport with logic and the factual record, a departure on this basis was an abuse of discretion. *State v. Guzman*, 892 N.W.2d 801, 810 (Minn. 2017) ("A district court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." (citing *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012))).

The majority, citing *Carson*, 320 N.W.2d at 438, claims that to establish that a defendant played a minor or passive role, our law only requires us to compare the conduct of the defendant with other participants in the same crime. The majority determines that because Stempfley, compared to Smith, did not "initiate[ ]" the sexual assault, the district court properly concluded that Stempfley's role was minor or passive. This analysis is flawed. The mere fact that Stempfley did not initiate the assault does not mean that Stempfley played a minor or passive role in the crime. Our case law has never held otherwise. *See State v. Campbell*, 367 N.W.2d 454, 461 (Minn. 1985) ("The evidence justifies the conclusion that *defendant was not a passive participant* but helped plan the crime, helped .... gain access to the apartment, and helped conceal the crime afterward." (emphasis added)). Preventing a victim's escape, as Stempfley did here, is not minor or passive, because it was essential to the commission of the crime.

Moreover, the focus on "minor or passive" ignores the larger, central question

of whether Stempfley's conduct was "different from the typical case." There is no evidence in the record that Stempfley's conduct was so atypical as to warrant a departure. Although the majority is correct that we have at least once evaluated a defendant's conduct in comparison to co-perpetrators, *Carson*, 320 N.W.2d at 432, that is not the *only* consideration that we weigh when reviewing whether a dispositional departure was properly imposed. The majority's review of the district court's sentencing decision focuses too narrowly on the minor or passive role, and fails to weigh the overarching question in our review of sentencing departures.

Our law clearly establishes that, to depart from a presumptive sentence in any case, the district court must be satisfied that "the defendant's conduct in the offense of conviction was *significantly more or less serious than that typically involved* in the commission of the crime in question." *State v. Vance*, 765 N.W.2d 390, 393 (Minn. 2009) (emphasis added) (citation omitted) (internal quotation marks omitted). This requires us to compare a defendant's conduct not only with any co-perpetrators, but also with *other* offenders convicted of similar offenses to determine if the sentence "comport[s] with sentences imposed on other offenders for similar offenses." *Warren*, 592 N.W.2d at 452. Typicality has long been the touchstone of legally permissible sentencing departures,[2] *Shattuck*, 704 N.W.2d at 141 ("[W]e have sought to effectuate the guidelines' purposes by *requiring* the district court to utilize the presumptive sentence *in the usual case*." (emphasis added)); *Peake*, 366 N.W.2d at 301 (Minn. 1985) ("Substantial and compelling circumstances are those circumstances that make the facts of a particular case *different from a typical case*." (emphasis added)). Thus, the majority's exclusive focus on why Stempfley's conduct was minor or passive *solely* in comparison to Smith's conduct misses the mark. Without evidence in the record demonstrating why this case is different from the typical case of aiding and abetting a sexual crime—and not merely that Stempfley's conduct was different than Smith's—the dispositional departure is unsupported by the record.[3] *State v. Leja*,

**2.** In affirming the district court's grant of a significant dispositional departure, the majority does not address the district court's failure to make findings on whether Stempfley was amenable to probation. Though we consider typicality in departures of both types, we have previously considered offender-related factors, such as amenability to probation, as the focus when granting a dispositional departure. *See State v. Solberg*, 882 N.W.2d 618, 623 (Minn. 2016) ("A dispositional departure *typically* focuses on characteristics of the defendant that show whether the defendant is particularly suitable for individualized treatment in a probationary setting." (emphasis added) (citation omitted) (internal quotation marks omitted)); *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982) ("[A] defendant's particular amenability to individualized treatment in a probationary setting will justify departure in the form of a stay of execution of a presumptively executed sentence."). Given the significant concerns noted in Stempfley's Pre-Sentence Investigation Report, including his past failures to comply with various probationary conditions, he is plainly not particularly amenable to probation.

**3.** In fact, it is entirely possible that victim restraint is fairly "typical" behavior by an accomplice to a sexual-assault crime. The district court record, however, has no evidence on whether this is the case because the district court did not conduct a typicality review at sentencing. I do not discount the difficulty of engaging in a typicality analysis, particularly when criminal liability is established on an aiding-and-abetting theory, *see State v. Leja*, 684 N.W.2d 442, 450 (Minn. 2004) (discussing the difficulty of defining a "typical" case), but our precedent clearly required the district court to discern whether Stempfley's crime deviated from the "typical case," *id.* at 450 (asserting that without adhering to the "threshold of substantial and compelling cir-

684 N.W.2d 442, 448 (Minn. 2004) (noting that we review sentencing decisions "under an abuse of discretion standard, *but* there must be substantial and compelling circumstances in the record" (emphasis added) (citation omitted) (internal quotation marks omitted)). Without record evidence demonstrating how this dispositional departure compares to sentences imposed on *other offenders* for *typical offenses*, the departure is not supported by the record, and therefore was an abuse of discretion. *Cf. Warren*, 592 N.W.2d at 452.

Although appellate courts will not disturb a district court's decision to depart from a presumptive sentence on the basis of mere disagreement, here, the district court abused its discretion by granting a dispositional departure because it failed to make factual findings specifically identifying "substantial and compelling circumstances" to support either that Stempfley played a "minor or passive" role, or that this offense was less serious than the typical case. The record does not support the conclusion that Stempfley is otherwise entitled to a departure. *Williams*, 361 N.W.2d at 844 ("If the reasons given are improper or inadequate and there is insufficient evidence of record to justify the departure, the departure will be reversed.").

Accordingly, I would remand for imposition of the presumptive sentence.

cumstances" to justify departure, "[t]he sentencing guidelines lose all meaning"); *Taylor*, 670 N.W.2d at 588 ("[T]he law will not be served if judges fail to follow the [g]uidelines in the 'general case.'" (citation omitted) (internal quotation marks omitted)).