*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0746**

State of Minnesota,
Respondent,

vs.

Elvis Joko Porte,
Appellant.

**Filed April 29, 2024
Affirmed
Johnson, Judge**

Olmsted County District Court
File No. 55-CR-22-6796

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, Carrie J. Osowski, Senior Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Cochran, Presiding Judge; Johnson, Judge; and

Halbrooks, Judge.*

---

        *Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**JOHNSON**, Judge

Elvis Joko Porte pleaded guilty to second-degree controlled-substance crime. The district court imposed an executed prison sentence of a duration that is within the presumptive guidelines range. We conclude that the district court did not err by denying Porte's motion for a downward durational departure. Therefore, we affirm.

## FACTS

In October 2022, the state charged Porte with first-degree controlled-substance crime, in violation of Minn. Stat. § 152.021, subd. 1(1) (2020), based on the allegation that, on December 29, 2021, he sold 23.284 grams of methamphetamine to a confidential informant in exchange for $500. According to the complaint, the confidential informant initially agreed to purchase methamphetamine from D.L.K., who then arranged for the confidential informant to purchase methamphetamine directly from Porte.

In March 2023, the state and Porte entered into a plea agreement. Porte agreed to plead guilty to an amended count of second-degree controlled-substance crime, in violation of Minn. Stat. § 152.022, subd. 1(1) (2020). In exchange, the state agreed to not charge Porte with any additional drug offenses that he might have committed before his guilty plea. The parties also agreed that Porte could argue for a downward durational departure at sentencing.

Before sentencing, Porte filed a one-page motion for a downward durational departure. The district court conducted a sentencing hearing in April 2023. At the outset of the hearing, the district court and counsel agreed that Porte's offense is at a severity level

of D7, that he has seven criminal-history points, that a three-month custody-status enhancement is appropriate, and that the resulting presumptive guidelines range is 95 to 132 months. *See* Minn. Sent'g Guidelines 2.B.2.c., 4.C. (Supp. 2021). Porte's attorney requested a prison sentence of 57 months, which would allow Porte to be released from prison soon after completing his term of imprisonment for a prior controlled-substance-crime conviction. Porte argued that a downward durational departure was appropriate because police officers orchestrated the controlled buy, including the amount of methamphetamine sold. The district court denied Porte's motion and imposed an executed sentence of 95 months of imprisonment, the shortest duration within the presumptive guidelines range. Porte appeals.

## DECISION

Porte argues that the district court erred by denying his motion for a downward durational departure and imposing a sentence within the presumptive guidelines range.

The Minnesota Sentencing Guidelines prescribe presumptive sentences for felony offenses. Minn. Sent'g Guidelines 2.C (Supp. 2021). For any particular offense, the guidelines sentence is "presumed to be appropriate for all typical cases sharing criminal history and offense severity characteristics." Minn. Sent'g Guidelines 1.B.13 (Supp. 2021). Accordingly, a district court "must pronounce a sentence . . . within the applicable [presumptive] range . . . unless there exist identifiable, substantial, and compelling circumstances to support a departure." Minn. Sent'g Guidelines 2.D.1 (Supp. 2021). "Substantial and compelling circumstances for a durational departure are those which demonstrate that the defendant's conduct was significantly more or less serious than that

3

typically involved in the commission of the crime in question." *State v. Rund*, 896 N.W.2d 527, 532 (Minn. 2017) (quotations omitted).

This court applies an abuse-of-discretion standard of review to a district court's denial of a defendant's motion for a downward departure. *State v. Stempfley*, 900 N.W.2d 412, 417-18 (Minn. 2017); *State v. Bertsch*, 707 N.W.2d 660, 668 (Minn. 2006). Only in a "rare case" will we reverse a district court's imposition of a presumptive sentence. *Bertsch*, 707 N.W.2d at 668; *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981).

In this case, the district court determined that there are no substantial or compelling reasons to depart from the presumptive sentence because Porte's offense is "just a typical second-degree controlled-substance crime."

Porte contends that his offense is less serious than the typical second-degree controlled-substance crime on the ground that he admitted to selling controlled substances on only one occasion and because law-enforcement officers determined the amount of methamphetamine sold. We recently rejected a nearly identical argument, reasoning that no caselaw supports the proposition that "the sale of a controlled substance in a controlled buy is a less-serious or less-dangerous offense than the typical offense" and that "the fact that [the appellant's] sale occurred on one day does not render his offense less serious than a typical third-degree drug sale." *State v. Fritz*, No. A19-1307, 2020 WL 3172805, at *2-3 (Minn. App. June 15, 2020). We reject Porte's argument for the same reasons.

Even if we were to focus on the amount of methamphetamine sold in the controlled buy, we would not conclude that Porte's offense is less serious than typical. Porte admitted to selling approximately 23 or 24 grams of methamphetamine, which is more than twice

the 10-gram threshold for second-degree controlled-substance crime. *See* Minn. Stat. § 152.022, subd. 1(1). Notably, the amount Porte admitting to selling is more than the 17-gram threshold for first-degree controlled-substance crime. *See* Minn. Stat. § 152.021, subd. 1(1). Yet the plea agreement allowed Porte to plead guilty to the lesser offense of second-degree controlled-substance crime. Arguably, Porte's conduct is *more* serious than the typical second-degree controlled-substance crime, based on the amount of methamphetamine he sold.

Porte also contends that his case is less serious than typical on the ground that the defendants in five other cases, which he asserts are factually similar, received downward durational departures. In general, an appellate court determines whether an appellant's offense is typical or atypical by relying on "our collective, collegial experience in reviewing a large number of criminal appeals." *State v. Mattson*, 376 N.W.2d 413, 415 (Minn. 1985) (quotation omitted). But three of Porte's comparison cases were not reviewed by an appellate court. In the two cases cited by Porte that were reviewed by this court, the defendants received downward durational departures, but the departure decisions were not at issue on appeal. *See State v. Vang*, No. A19-1945, 2020 WL 7329975 (Minn. App. Dec. 14, 2020), *rev. denied* (Minn. Feb. 24, 2021); *Roberts v. State*, No. A14-0598, 2015 WL 134050 (Minn. App. Jan. 12, 2015), *rev. denied* (Minn. Mar. 25, 2015). Consequently, those two opinions are not helpful in defining the category of less-serious-than-typical cases. Porte does not attempt to identify the characteristics of a typical second-degree controlled-substance crime. In any event, we note that we recently affirmed the denials of requests for downward durational departures in cases that may be deemed

5

factually similar. *See, e.g.*, *Love v. State*, No. A20-0681, 2021 WL 79308, at *2 (Minn. App. Jan. 11, 2021), *rev. denied* (Minn. Mar. 16, 2021); *Fritz*, 2020 WL 3172805 at *2-3; *State v. Quick*, No. A18-1166, 2019 WL 1431922, at *2 (Minn. App. Apr. 1, 2019).

Porte last contends that his case is less serious than typical on the ground that statistical data gathered by the sentencing guidelines commission shows that, between 2016 and 2020, 21 percent of persons convicted of second-degree controlled-substance crime in Minnesota (and 19 percent of persons convicted of that offense in Olmsted County) received a downward durational departure. Porte does not explain how that statistical data shows that *his* offense was significantly less serious than the typical offense. The data submitted by Porte does not include any information about the facts of the other cases, which makes it impossible to make meaningful comparisons. The data could just as well be used to show that Porte likely is among the approximately four-fifths of offenders whose crimes are typical and, thus, are deserving of a sentence within the presumptive range. We nonetheless note that the data in the district court record reflects only two other offenders who appear to be similarly situated to Porte in that they were convicted of second-degree controlled-substance crime while having six or more criminal-history points, having a prior drug offense, and being on supervision at the time of the offense. Both of those offenders received prison sentences of 92 months, only three months less than Porte's sentence.

Thus, Porte has not demonstrated that the district court abused its discretion by determining that Porte's offense is not significantly less serious than the typical offense and that there are no substantial or compelling reasons to depart from the presumptive

6

guidelines range.  Accordingly, the district court did not err by denying Porte's motion for a downward durational departure.

**Affirmed.**